IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

*Newport News Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **Criminal Case No. 4:17cr2** |
| | ) | |
| v. | ) | **Sentencing Date: February 23, 2018** |
| | ) | |
| JESSE LOCKHART, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

<u>POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING</u>

The United States of America, through its attorneys, Tracy Doherty-McCormick, Acting

United States Attorney, and Amy E. Cross, Special Assistant United States Attorney, hereby

submits its position with respect to Defendant Tamara Washington's (hereinafter "Defendant" or

"Washington") sentencing factors.  In the Presentence Investigation Report (PSR) prepared in

this matter, the United States Probation Office determined the applicable Guidelines Range to be

a guideline range of 92 to 115 months imprisonment, based upon an Offense Level Total of 24

and a Criminal History Category of V, followed by 84 months on the 924(c) conviction.   In

accordance with Section 6A1.2 of the Sentencing Guidelines Manual and this Court's policy

regarding sentencing, the United States represents that it has reviewed the PSR and has

objections to the advisory guidelines as calculated by probation.

For the reasons outlined below, the United States respectfully submits that the Defendant

should be sentenced to a term of 108 months' imprisonment, plus 84 months for the firearm

count, a sentence which would be sufficient, but not greater than necessary, to accomplish the

goals of 18 U.S.C. § 3553(a).

**Background**

On November 17, 2017, the Defendant entered a guilty pleas without a plea agreement to all four counts of the second superseding indictment, including Interference with Commerce by Robbery (18 U.S.C. § 1951(a)), Brandishing of Firearm in Furtherance of a Crime of Violence (18 U.S.C. §924(c)(1)(A)), Conspiracy to Obstruct Justice (18 U.S.C. §§ 371, 1503), and Obstruction of Justice (18 U.S.C. § 1503).   The Honorable Robert J. Krask accepted the defendant's guilty plea, and the matter was set for sentencing on February 23, 2018, after preparation of a presentence investigation report.

**Objections to the Advisory Sentencing Guideline Calculation**

Because the Court must first correctly determine the applicable guideline range after making appropriate findings of fact, the United States has noted several objections to the calculation of the advisory sentencing guidelines.  See *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006).  In setting forth these objections, the United States understands that the government has the burden of proving aggravating factors, or enhancements, by a preponderance of the evidence.  *United States v. Vinson*, 886 F.2d 740, 741-42 (4th Cir. 1989).  To find a preponderance of the evidence, the District Court must only find "that the fact is more probable than its non-existence." *United States v. Manigan*, 592 F.3d 621, 631 (4th Cir. 2010)(internal citations and punctuation omitted).

First, the United States submits that obstruction of justice offenses (Counts 4 and 5) should be grouped with the robbery offense under U.S.S.G. § 3C1.1, Comm., app. nt. 8.  See PSR – Page 28, Objections to ¶¶ 12, 48.  If the guidelines are handled in this manner, the remaining objections by the United States are moot.

However, if the Court finds that the conspiracy to obstruct the administration of justice

and the substantive obstruction of justice offense should be not grouped with the underlying

offense of robbery, the United States contends that the advisory sentencing guideline calculation

should include (1) a two-level enhancement for the other extensive scope, planning and

preparation of the obstruction offenses, see U.S.S.G. § 2J1.2(b)(3), and (2) a five-level

enhancement for the brandishing of a firearm during a crime of violence in the cross-reference,

see U.S.S.G. § 2X3.1, Comm, app. nt. 1.  If these objections are granted, the Defendant's

advisory sentencing guidelines range could be altered.

## I.  OBSTRUCTION OFFENSES ARE GROUPED WITH THE UNDERLYING OFFENSES WHEN BOTH ARE CHARGES OF CONVICTION.

Because the Defendant actively conspired to and did obstruct his federal prosecution for

robbery with a firearm, the obstruction should be grouped with the robbery, as the underlying

offense, and his guidelines enhanced by two-levels for the obstructive conduct.  Where a

defendant "is convicted of both an obstruction offense… and the underlying offense…, the

Sentencing Guidelines provide that 'the count for the obstruction offense will be grouped with

the count for the underlying offense[s].'" *United States v. Jones*, 716 F.3d 851, 857 (4th Cir.

2013), citing USSG § 3C1.1 cmt. n. 8.

The Fourth Circuit has held that a "court should group obstruction offenses under USSG

§ 3B1.2(c), which groups criminal counts of conviction '[w]hen one of the counts embodies

conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline

applicable to another of the counts.'" *Id*. at 858.  Commentary to §3D1.2 specifically provides

that "a count such as obstruction of justice, which represents a Chapter Three adjustment and

involves a different harm or societal interest than the underlying offense," should be grouped

with the underlying offense.  USSG § 3D1.2, cmt. n. 5.   In this case, the obstruction offenses,

both Counts 4 and 5, create a two-level Chapter Three obstruction enhancement to the robbery guidelines; thus, the offenses must be grouped.

Based on the foregoing, the Defendant's guidelines should reflect the following:

| | | |
|---|---|---|
| **Base Offense Level** | **20** | **2B3.1(a)** |
| Special Offense Characteristics | | |
|     Brandishing Firearm | (+5) | 2B3.1(b)(2), 2K2.4, cmt. n. 4 |
|     Physical Restraint | +2 | 2B3.1(b)(4) |
| Obstruction of Justice | +2 | 3C1.1, cmt. n. 8, 3D1.2(b) |
| **Adjusted Offense Level** | **24** | |
| Acceptance of Responsibility | 0 | 3C1.1, cmt. n. 4 |
| **Total Offense Level** | **24** | |

"Grouping [in this manner] serves two purposes: (1) obviating a factual finding of obstruction at sentencing when the trier of fact has already reached such a finding at the guilt phase; and (2) preventing the 'double counting' that would occur if a district court applied both a base offense level to the obstruction conviction and a two-level enhancement to the underlying offense." *United States v. Jones*, 716 F.3d 851, 857-858 (4th Cir. 2013), citing §3D1.2 cmt. n. 5.

Any additional aggravating factors, such as role in the obstruction or conduct outside those reflected by this guideline calculation, may be considered by the Court in its assessment of the § 3553(a) factors at sentencing and any warranted departure or variance from the advisory sentencing guideline range.

The Defendant's advisory guidelines range with a total offense level of 24 and a criminal history category of V under this calculation are 92 to 115 months on Counts One, Four and Five. Count Two carries a mandatory minimum 84 months sentence, which must be served consecutively to any other sentence.

## II.  IF THE ROBBERY AND OBSTRUCTION OFFENSES ARE NOT GROUPED, ADDITIONAL GUIDLINE CONSIDERATIONS ARE WARRANTED.

If the obstruction offenses are not grouped with the robbery guidelines, the Court must separately consider the offenses.

### A.  Robbery Guidelines under USSG § 2B3.1

First, the Count One robbery guidelines are as follows:

| | | |
|---|---|---|
| Base Offense Level | 20 | 2B3.1(a) |
| Special Offense Characteristics | | |
| Brandishing Firearm | (+5) | 2B3.1(b)(2), 2K2.4, cmt. n. 4 |
| Physical Restraint | +2 | 2B3.1(b)(4) |
| Adjusted Offense Level | 22 | |
| Acceptance of Responsibility | 0 | 3C1.1, cmt. n. 4 |
| Total Offense Level | 22 | |

### B.  Guidelines for Brandishing Firearm under USSG §2K2.4

Second, as noted in the PSR, there are no guidelines for violation of 18 U.S.C. §924(c)(1)(A), to wit: Brandishing a Firearm in Furtherance of a Crime of Violence.

### C.  Guidelines for Conspiracy and Substantive Obstruction of Justice Counts under USSG §§ 2X1.1, 2J1.2, 2X1.3 and 2B3.1

Third, the Conspiracy to Obstruction the Administration of Justice (Count 4) is calculated using USSG § 2X1.1. The cross-reference provision of 2X1.1 instructs that "when… [a] conspiracy is expressly covered by another offense guideline section, apply that guideline section."  Because Obstruction of Justice is expressly covered in USSG §2J1.2, that guideline should be used.  USSG §2J1.2 also applies to the substantive Obstruction of Justice count (Count 5).

The guidelines for the obstruction offenses under §2J1.2, the United States submits, should be as follows:

| | | |
|---|---|---|
| Base Offense Level | 14 | 2J1.2(a) |
| Special Offense Characteristics | | |
| -   Substantial Interference with | | |
|     Administration of Justice | +3 | 2J1.2(b)(2) |
| -   Otherwise Extensive Scope, | | |
|     Planning or Preparation | +2 | 2J1.2(b)(3) |
| Role: Leader, Organizer | +2 | 3B1.1(c) |
| Adjusted Offense Level | 21 | |
| Acceptance of Responsibility | 0 | 3C1.1, cmt. n. 4 |
| Total Offense Level | 21 | |

1.   *The Defendant's lengthy obstruction entangling multiple individuals which was completed through phone calls, letters and personal visits was extensive in its scope, planning and preparation.*

The United States asks that the Court apply the two-level enhancement under USSG § 2J1.2(b)(3) for the extensive scope, planning and preparation of the obstruction offense.  See U.S.S.G. §2J1.2(b)(3).[1]  USSG § 2J1.2(b)(3) provides an additional two-level enhancement for conduct which involves "the destruction, alteration, or fabrication of a substantial number of records, documents, or tangible objects;… the selection of any essential or especially probative record, document, or tangible object, to destroy or alter; or was otherwise extensive in scope, planning, or preparation."

There is no commentary from the Sentencing Commission and a dearth of case law interpreting the operative term of "otherwise extensive" in 2J1.2(b)(3)(C).  *U.S. v. Petruk*, 836 F.3d 974, 977 (8th Cir. 2016). The Fourth Circuit has not addressed specifically what "otherwise extensive" scope, planning and preparation entails. The Eleventh Circuit has also found that there "is no precise definition of 'otherwise extensive' standard." *United States v. Tomaskovic*,

---

[1] Probation determined that discussing, ordering and placing the fake firearm was "relative" and submits the United States' objection to the Court for a finding of fact.  PSR p. 28, Unresolved Objections.

6

275 Fed App'x 884, 888 (11th Cir. 2008).   There are a number of factor which are relevant to the extensiveness determination, including the length and scope of the criminal activity as well as the number of persons involved. *Id.*

The enhancement has applied in a variety of factual scenarios from international parental kidnapping to planned fabrication of a false confession. See *Tomaskovic*, *supra*, 275 Fed. App'x 884 (11th Cir. 2008)(offense was extensive based on 16 month kidnapping involving multiple people and locations as well as the use of false documents); *Petruk, supra*, 836 F.3d 974 (8th Cir. 2016)(inmate's plot to have girlfriend recruit a person to read a scripted false confession on recorded jail call was extensive and enhancement applied); *United States v. Rodriguez*, 499 Fed. App'x 904 (11th Cir. 2012)(enhancement applied when inmate's plan to frame correctional officer for rape required extensive planning to plant semen and hair evidence using her boyfriend).

In *Petruk*, the Eighth Circuit upheld the enhancement for an inmate's plan to have his girlfriend recruit a third party to read a false confession over the recorded prison phone system to help exonerate him.  In finding that the offense was otherwise extensive in its scope, planning or preparation, the Court found that while ill-fated, the inmate's plan was fairly complicated.  He desired his girlfriend to recruit another to make a false confession which he scripted. The planning was done over several days and required multiple phone calls and correspondence. Because the Court agreed that Petruk's actions were an "elaborate and complicated scheme to corrupt prosecution with false evidence," including the "gathering together of lies and misrepresentations," the enhancement under §2J1.2(b)(3)(C) was appropriate.

In this case, Lockhart and his co-conspirators began discussions in December 2016. Lockhart sent letters to both Washington, his sheriff-deputy girlfriend, and mother, regarding what he wants them to do to assist him in having the firearm count dismissed.  He sent mail to Washington at her sister's and her mother's homes beginning in December 2016.  By January 18, 2017, Washington and Lockhart engage in coded discussions about the "one way for him to get out of the second charge."  Washington told Lockhart that she needed to re-read what she had agreed to do.

On January 28, 2017, the two meet again at Western Tidewater Regional Jail. In order to hide their communications, they mouth words and write messages to communicate.  During this time, Lockhart asked his sister if she had "hollered at Tamara," stating that Washington "has to take this serious."[2]  Only two days later, Lockhart told his mother that he left "shoes," the code for the airsoft pistol, at Washington's house and asked if his mother would pay Washington for the shoes when she brought them to his mother.

By February 3, 2017, Washington, at Lockhart's direction, purchased a replica airsoft pistol. She located a look-alike firearm based on the description provided by Lockhart's mother, ordered it, and modified it to make it appear real.  On February 8, 2017, Washington reported to Lockhart in coded language that she had the airsoft pistol.   Lockhart orchestrated Washington turning the pistol over to his mother.

---

[2] The United States will call TFO A. Moreland as a witness at the sentencing hearing to provide testimony concerning the ways, manner and means the conspiracy to obstruct the administration of justice occurred. TFO Moreland will also testify about the extensive efforts of law enforcement to detect and dismantle the obstruction, including but not limited to listening to hours of jail calls, reviewing evidence, requesting expert assistance to enhance the robbery surveillance video, and interviewing the store clerk/victim regarding the firearm used in the robbery.

On February 20, 2017, Lockhart told his mother that his lawyer and an investigator from the lawyer's office would pick up the airsoft pistol. His mother told Lockhart that she did not want federal agents in her house. Lockhart assured her that the only people that would come to the house were the lawyer and investigator. Over two weeks between February 20 and March 3, the Defendant and his mother discussed his mother's communication with federal agents and what she is supposed to do (as he had written her in a letter). On March 6, 2017, Lockhart's mother turned over the airsoft firearm to federal agents.

Like *Petruk*, Washington, Lockhart and his mother were all gathering together lies and misrepresentations – specifically about the firearm used by Lockhart in the Exxon robbery. Even more involved than *Petruk*'s plan, Lockhart had Washington fabricate the evidence and pass it along to the next member of the conspiracy. The conspiracy lasted over weeks, not days like *Petruk*. It involved multiple people, entangling even Lockhart's attorney and his investigator. Coded language, alternate addresses, subterfuge – this conspiracy was much more than a "relative" internet order of a fake gun. As such, the United States respectfully requests that the Court apply the two-level enhancement for the extensive scope, planning and preparation of this offense.

> 2.  *Defendant's cross-reference to §2X3.1 Accessory After the Fact should include all specific offense characteristic enhancements including the firearm.*

Once the Court determines the adjusted offense level under §2J1.2, the Court must cross-reference to the Accessory After the Fact provisions under §2X3.1. The Sentencing Guidelines for §2J1.2 provide that if "the offense involved obstructing the investigation or prosecution of a criminal offense, apply §2X3.1 (Accessory After the Fact) in respect to that criminal offense, if the resulting offense level is greater than that determined above." USSG § 2J1.2(c)(1).

Application of §2X3.1 to the obstruction offense requires application of the underlying offense, herein Robbery, §2B3.1.  USSG § 2X3.1 provides that the base offense level should be 6 levels lower than the offense level for the underlying offense. "For the purposes of this guideline, 'underlying offense' means the offense as to which the defendant is convicted of being an accessory…." USSG § 2X3.1, cmt. n. 1.  Application of the cross-reference requires the application of the base offense level plus any applicable specific offense characteristics that were known, or reasonably should have been known, by the defendant." *Id.*

| | | |
|---|---|---|
| **Base Offense Level** | **14** | **2X3.1(a)(1), 2B3.1(a)** |
| Special Offense Characteristics | | |
| -    Brandishing Firearm | +5 | 2B3.1(b)(2), 2K2.4, cmt. n. 4 |
| -    Physical Restraint | +2 | 2B3.1(b)(4) |
| Role: Leader, Organizer | +2 | 3B1.1(c) |
| **Adjusted Offense Level** | **23** | |
| Acceptance of Responsibility | 0 | 3C1.1, cmt. n. 4 |
| **Total Offense Level** | **23** | |

The United States submits that the five-level enhancement under §2B3.1(b)(2) for brandishing a firearm during the robbery should be applied to this guideline.  Recognizing that USSG § 2K2.4 directs that "the specific offense characteristic for possession, brandishing, use or discharge of an explosive device or firearm when determining the sentence for the *underlying* offense" should not be applied in conjunction with a sentence for an *underlying offense.*  USSG §2K2.4, cmt. n. 4, emphasis added. The post-indictment obstruction in the case squarely affected both the robbery and firearm offenses.  In fact, the entire conspiracy was directed at having the firearm count dismissed.  The underlying offense is the robbery, not obstruction, for the purposes of the guidelines so there is no double-counting.  Further, failure to account for the firearm in the obstruction treats the Defendant substantially different than his co-conspirators.

If the Court does not find that the five-level enhancement applies in the cross-reference to USSG § 2B3.1, the resulting adjusted offense level is an 18, lower than the adjusted offense level of 21 under USSG §2J1.2.  In which case, the Court may consider whether an upward departure under USSG §5K2.9 is warranted.  See *United States v. Davis*, 293 F.Supp. 2d 652, 656 (EDVa December 3, 2003).

**D.  *Grouping of Counts at Sentencing***

*1.  Grouping of Robbery (§2B1.3) and Obstruction Offenses (§2J1.2)*

If the Court finds that the Obstruction of Justice guidelines under USSG § 2J1.2 are greater, the counts would be grouped as follows:

| Group | | Adjusted Offense Level | Units |
|---|---|---|---|
| Count 1 | Robbery | 22 | 1.0 |
| Count 2 | Use of Firearm | -- | -- |
| Counts 4&5 | Obstruction Offenses | 21 | 1.0 |
| Greater of the Adjusted Offense Levels | | 22 | |
| Add Total Units | | +2 | |
| **Combined Adjusted Offense Level** | | **24** | |
| Acceptance of Responsibility | | 0 | |
| **Total Offense Level** | | **24** | |

The Defendant's advisory guideline range, based on a total offense level of 24 and a criminal history category of V, would be 92 to 115 months.

*2.  Grouping of Robbery (§2B1.3) and Cross-Reference of Obstruction Offense (§2X1.3)*

However, if the Court finds that the guidelines are greater under the cross-reference from 2X3.1 to 2B3.1, the counts would be grouped as follows:

| Group | | Adjusted Offense Level | Units |
|---|---|---|---|
| Count 1 | Robbery | 22 | 1.0 |
| Count 2 | Use of Firearm | -- | -- |
| Counts 4&5 | Obstruction Offenses | 23 | 1.0 |

11

| | |
|---|---|
| Greater of the Adjusted Offense Levels | 23 |
| Add Total Units | +2 |
| **Combined Adjusted Offense Level** | **25** |
| Acceptance of Responsibility | 0 |
| **Total Offense Level** | **25** |

The Defendant's advisory guideline range, based on a total offense level of 25 and a

criminal history category of V, would be 100 to 125 months.

**Position on Sentencing and Argument**

"[I]n imposing a sentence after *Booker*, the district court must engage in a multi-step

process.  The court must determine the applicable guidelines, including making any factual

findings to support the guidelines.  *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006).

"Next, the court must 'determine whether a sentence within that range serves the factors set forth

in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'"

*Id.* (quoting *United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006)).  In making this

determination,

> a sentencing court must consider "the nature and circumstances of the offense and
> the history and characteristics of the defendant" and the need "to reflect the
> seriousness of the offense," provide "just punishment," "afford adequate
> deterrence," "protect the public," and "avoid unwarranted sentence disparities
> among defendants with similar records who have been found guilty of similar
> conduct."

*United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006) (quoting 18 U.S.C. § 3553(a)).

In light of the sentencing factors, the United States respectfully requests that the

Defendant be sentenced 16 years (108 months, plus 84 months) incarceration for the violent

armed robbery of a Hampton Exxon in March, 2016 and his obstruction of the federal

prosecution that followed.

## A.      Nature and Circumstances of the Offense

Late in the evening in March 2016, Jesse Lockhart ran into a gas station, wearing a mask and brandishing a gun.  He physically assaulted the store clerk, while pointing gun at her chest and demanded money.  Despite the mask, the clerk recognized him as a regular in the store. Lockhart grabbed money from the cash register. With his ungloved left hand, he picked up multiple packs of cigarettes from behind the counter.  He fled the location, but not before dropping one pack of stolen cigarettes.

Soon, Lockhart was identified.  Forensic technicians lifted his palm print from the stolen cigarettes. The store clerk identified Lockhart as the gun man in a photo line-up. Lockhart was arrested on federal warrants in December, 2016 and indicted in January, 2017.

Between December 2016 and March 2017, Lockhart entangled his mother and a sheriff's deputy into his plan to create false evidence – a replica airsoft gun -  so he could have his firearm charge dismissed and could get out of jail.  Lockhart lied to his attorney. He lied to his investigator with his attorney's office.  He used his attorney and the investigator to lie to the United States Attorney's Office and federal agents.  He used people, including his family and those he reportedly loved, to benefit himself and to subvert his prosecution.

For more than three months while in federal custody, Lockhart guided and directed his girlfriend Tamara Washington and his mother in his plan to beat his charged.  Lockhart sent letters,[3] talked at visitations, and spoke in code on recorded jail calls about their plan. Lockhart had his mother talk to Washington.  Washington obtained a description of the firearm used in the robbery by Lockhart. At Lockhart's request, Washington then ordered a Kahr Arms TP45 airsoft pistol and had it delivered to her residence.  Washington, who was familiar with firearms as part of her training as a

---

[3] The United States will present evidence that Washington provided Lockhart with her sister's address in Newport News, Virginia to conceal their correspondence.  To further conceal their planned fraud, Washington and Lockhart discussed the matter in code on recorded jail calls. Further, Washington and Lockhart, knowing that visitations were recorded, wrote notes to avoid detection of their plan.

sheriff's deputy, modified the airsoft pistol to make it appear more realistic.  She delivered the pistol

to Lockhart's mother, who was to turn the pistol over to the Bureau of Alcohol, Tobacco, Firearms

and Explosives (ATF), based on coordination by Lockhart's defense attorney.

Due to the fraud, Lockhart's jury trial was continued. Agents and officers spent hours

attempting to verify the new evidence. Ultimately, after listening to more than one hundred coded jail

calls (over thirty hours), consulting with an expert to enhance the surveillance video from the

robbery, and  reviewing visitation logs and contacts, agents determined that the airsoft firearm was

not used in the robbery.

This offense strikes at the heart of the criminal justice system -- a convicted felon,

incarcerated on federal charges awaiting trial, planning and implementing a conspiracy to create false

evidence - using a law enforcement officer and his mother.  The plan devised by Lockhart was only

about his finding a way to avoid full responsibility for his violent criminal actions with a firearm.   .

### B.    *History and Characteristics of the Defendant*

This 24-year old defendant's history and characteristics create a concerning picture of a

young man with a history of violent behavior and lack of respect for the law or others.

<u>Upbringing and Family:</u>

Lockhart, the oldest of two children, was raised in Newport News by his mother,

Germekia Lockhart and his grandmother. During his youth, Lockhart had contact with his father

when his father was not incarcerated.[4]  His father is presently serving a lengthy sentence on gun

and drug charges. PSR ¶ 71.

The Defendant has never been married, but has four children, ages 1 to 5.  He has never

been ordered to be child support; although the children's mother, Laquita Banks, has petitioned a

Newport News court to establish a case.  PSR ¶ 74.  Ms. Banks indicated that she was unsure

---

[4] His father, Jesse Gilmore, has been in the Bureau of Prisons since 2005 on drug and firearm charges.

whether she and Lockhart were together prior to his arrest and whether they would be together upon his release.  *Id.*

At that time of his arrest, the Defendant was living between his grandmother and mother's homes in Newport News.  PSR ¶ 76.

Education and Employment:

The Defendant withdrew from Warwick High School in 2011, but received his General Education Development diplomas in 2012.  PSR ¶ 87.

The Defendant's employment history is minimal.  The Defendant reported no employment in 2012 and 2013.  His job history primarily includes short-term work as a laborer (3 months), a remodeling technician (5 months), a desk clerk (5 months), a service associate (7 months) and a barber (6 months).  PSR ¶¶ 89-93.

Despite his education and clear ability to work, the Defendant elected to use a firearm to take property that did not belong to him.

Physical and Mental Condition:

Physically, the Defendant has no issues presently.  He is legally blind in his left eye as a result of a paintball accident when he was six years old. PSR ¶ 78.   In 2014, he suffered a gunshot wound to his foot.  PSR ¶ 79.

Despite good physical health, the Defendant does have a history of mental health issues. As a juvenile, Lockhart was diagnosed with depression and anxiety.  His mental health issues have been treated with medication.  There is no indication in the presentence investigation report that the Defendant continues to struggle with the issues or takes any prescribed medications.

Substance Abuse Issues:

The Defendant's reported substance abuse history is unclear.  In the presentence investigation report interview, Lockhart reported that he only tried marijuana once at age 14 and denied using all other illicit substances. He further stated that he had never had substance abuse treatment.  PSR ¶ 23.

However, his juvenile and adult probation records suggest differently.   Lockhart's juvenile supervision records indicate that he used marijuana much more routinely and was unreliable in reporting his drug usage.  Further, the records show that he successfully completed substance abuse and aggression management treatment.  PSR ¶ 85.  During his 2016 presentence investigation interview, Lockhart admitted to state probation officers that he smoked marijuana daily leading up to his state arrest in July 2015.  He also stated that he used ecstasy a couple times at age 18.  PSR ¶ 86.

Criminal History:

The Defendant's substantial criminal history is most concerning to the United States. Despite being only 24 years old, the Defendant is a criminal history category V. As a juvenile, the Defendant was convicted of robbery and performed poorly on supervision. PSR ¶ 56. In the two years before his arrest, the Defendant was convicted of felony narcotics possession, eluding police, possession of stolen property, entering property with intent to damage and two counts of false identification to police. PSR ¶¶ 57-61.

The Defendant has multiple opportunities over the last eight years to utilize resources offered to him – substance abuse treatment, job placement, educational opportunities, and community service, yet he has shown no change in his behavior. In fact, if anything, the Defendant's criminal actions have escalated.  Instead of accepting responsibility, the Defendant

concocted a plan to "get out" of his charges – and in the process, disrespected this Court and the law.

### C.        Other Factors to be Considered Under 18 U.S.C. § 3553(a)

Among the other factors a sentencing court is to consider under Section 3553(a), the United States would highlight the need for the sentence imposed in this case to reflect the seriousness of the defendant's offense and afford adequate deterrence to future criminal conduct, both specific and general.  Further, the sentence needs to provide respect for the law and protect the community.  Lockhart's escalating criminal history, his willingness to take by force and violence what he wants, and further lie and have other lie to escape responsibility demand a significant sentence.

It is important to note that the Sentencing Guidelines, if grouped as suggested by the United States, do not account for the Defendant's leadership role.  Those guidelines do not consider that he used his mother, his girlfriend and other family members in his scheme to create false evidence.  Those guidelines do not consider innocent persons he entangled in his subterfuge including his Federal Public Defender's Office attorney and investigator.

The Defendant's decision and actions to attempt to shield himself from taking responsibility for his violent criminal actions – actions which victimized others, including a store clerk, the company that lost business, and the customers whom were traumatized.  The Defendant's post-indictment actions undermine the very core of our criminal justice system.  As the United States maintained in the co-defendants' prosecutions, the purposeful fabrication of evidence to prevent the lawful prosecution of a violent crime, particularly a firearm offense, is outrageous and unacceptable. The seriousness of the act alone requires a significant sentence.

Based on the violent criminal actions and his deliberate attempt to thwart the prosecution of the same, the government respectfully submits that a sentence of 108 months, followed by 84 months on the firearm count, is sufficient, but not greater than necessary, to fulfill the purposes of Section 3553(a).

Respectfully submitted,

Tracy Doherty-McCormick
United States Attorney

By:    ___/s/_____
Amy E. Cross
Special Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of February, 2018, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will send a notification to the following:

> Crystina O'Brien, Esquire
> 10 W. Queens Way, Suite D
> Hampton, VA 23669

I HEREBY CERTIFY that on this 16th day of February, 2018, I emailed a true and correct

copy of the following to the following:

> Anita Powell, U.S. Probation Officer
> 827 Diligence Drive, Suite 210
> Newport News, Virginia 23606

> \_\_\_\_\_/s/_____
> Amy E. Cross
> Special Assistant United States Attorney
> Virginia State Bar No. 45289
> Attorney for the United States
> United States Attorney's Office
> 721 Lakefront Commons, Suite 300
> Office Number: 757-591-4026
> Facsimile Number: 757-591-0866
> Email: amy.cross@usdoj.gov